**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**


**HARRIET BLAND, AS PARENT AND NEXT
FRIEND OF JEREMY BLAND, A MINOR**                              **PLAINTIFF**


**VS.**                              **NO. 4:07CV00844 JMM**


**JOHN SELIG, IN HIS OFFICIAL CAPACITY
AS DIRECTOR OF THE ARKANSAS
DEPARTMENT OF HUMAN SERVICES, AND
ARKANSAS FOUNDATION FOR MEDICAL
CARE, INC.**                              **DEFENDANTS**


<u>**ORDER**</u>

Pending are Plaintiff's motion for summary judgment, docket # 23, Defendant Arkansas

Foundation for Medical Care Inc.'s motion for summary judgment, docket # 37 and Defendant

John Selig, In his Official Capacity as Director of the Arkansas Department of Human Services'

cross motion for summary judgment, docket # 40.  For the reasons stated herein, Defendant

Arkansas Department of Human Services' motion for summary judgment is granted, Defendant

Arkansas Foundation for Medical Care Inc.'s motion for summary judgment is denied as moot

and Plaintiff's motion for summary judgment is denied.

<u>Facts</u>

The plaintiff, Harriet Bland is the mother of Jeremy Bland, a 15 year old boy with spastic

quadriplegic cerebral palsy and neuronal migration abnormality.  Jeremy is a Medicaid eligible

individual who is presently eligible to receive medically necessary occupational, physical and

speech therapy services through Arkansas Medicaid's Child Health Services Early and Periodic

Screening, Diagnosis and Treatment ("EPSDT") Program.  For a number of years, Jeremy's

primary care physician prescribed physical therapy services for treatment of his disability.

Jeremy received those services under the Occupational, Physical, and Speech Therapy Services

("OPSTS") program.  The OPSTS program is part of the State Medicaid Plan.  The Arkansas

Department of Human Services ("ADHS") is the state agency charged with administration of the

Medicaid program in Arkansas.  Medical necessity for services provided under the OPSTS

program is determined under the rubric of retrospective review.[1]  On two occasions, ADHS, by

and through its agent, Arkansas Foundation for Medical Care, Inc. ("AFMC"), retrospectively

determined that the physical therapy services prescribed for Jeremy were not medically

necessary.

AFMC is the Quality Improvement Organization ("QIO") under contract with ADHS to

review speech, occupational and physical therapy provided to medical recipients under the age

of 21, to determine if those services provided are medically necessary, meet professional

recognized standards and are supported by documentation in the medical record.  AFMC has

engaged in peer review authorized by federal law, however, Plaintiff denies that AFMC

conducted the peer review in this case in a manner which was authorized by federal law.

AFMC determined that the records of Jeremy Bland which were provided for review for

the dates of service of June 23, 2005 through September 13, 2005 and for October 9, 2006

through December 18, 2006 did not support the medical necessity of those services.  Each denial

for a particular review period is limited to the dates of service reviewed for that period.  Plaintiff

argues that AFMC made these determinations under a system and in a manner that violates the

Medicaid Act.

---

[1]ADHS implemented a decision to determine medical necessity for occupational, physical
and speech therapy services by way of retrospective review on January 1, 2003.

Plaintiff contends that ADHS did not conduct an impact study prior to implementing its decision to determine medical necessity of physical therapy services provided under the OPSTS program on the basis of retrospective review; and has not conducted an impact study since implementing its decision to determine medical necessity of physical therapy services provided under the OPSTS program on the basis of retrospective review.  Further, Plaintiff claims that the rules governing retrospective review of physical therapy services provided under the OPSTS program do not require the approval of and require the denial of services that will result in the maximum reduction of physical and mental disability and restore children to the best-possible functional level.  Plaintiff also claims that AFMC does not determine medical necessity for physical therapy services provided under the OPSTS program in a manner that will result in the maximum reduction of physical and mental disability and restore children to the best-possible functional level.

ADHS argues that neither it nor AFMC have terminated or otherwise prevented Jeremy from presently receiving medically necessary physical therapy services.  Plaintiff admits this statement but claims that Jeremy's current provider has stated that, based on the history of previous denials, it will discontinue those services if no meaningful improvement is demonstrated at the end of six months, regardless of whether those services are ever subjected to retrospective review.

Beginning in approximately 2001 and continuing through June 2007, OnSite therapies, a Medicaid enrolled therapy provider, provided occupational, physical and speech therapy services to Jeremy which were billed to and reimbursed by Arkansas Medicaid.  Beginning in approximately 2001 and continuing until June, 2006, Jeremy received physical therapy at Onsite at an "intense level" with 300 minutes per week which is 60 minutes per day, five days a week.

3

During this same time period, Jeremy received speech and occupational therapy at Onsite for a total of 600 minutes per week.  In June 2006, Jeremy's primary care physician prescribed physical therapy at a reduced level of 225 minutes per week.  In June 2006, Onsite further reduced the level of Jeremy's physical therapy, speech therapy and occupational therapy to 180 minutes per week because it had received a denial concerning speech therapy.

In March 2007, Jeremy was examined by Vikki Stefans, M.D. after he fell from his wheelchair down a flight of steps when the Plaintiff slipped and dropped him.  Dr. Stefans treated Jeremy with botox injections that required physical therapy services of approximately three to four months after each injection.   During the September, 2007 hearing in this matter, Dr. Stefans opined that Jeremy should have had a minimum of 180 minutes of physical therapy per week, plus an intensive home program until his hamstring tightness was corrected.  At the time of the botox injection in March 2007, Onsite was providing physical therapy services to Jeremy 180 minutes per week.

In June, 2007, OnSite terminated all physical therapy services for Jeremy.  Plaintiff failed to perform the intensive home treatment program recommended by Dr. Stefans.  Plaintiff failed to seek another Medicaid enrolled therapy provider to perform medically necessary physical therapy services after Onsite terminated services.

Onsite continues to provide speech therapy and occupational therapy to Jeremy that are billed to and reimbursed by Arkansas Medicaid.  Onsite provides physical therapy to children other than Jeremy who are referred through EPSDT screens.  Occupational therapy and speech therapy are reviewed under the same retrospective review process as physical therapy services.

As a Medicaid eligible individual under the age of 21, Jeremy has access to medically necessary occupational, speech and physical therapy services and has had access to such service

4

since the retrospective review process was implemented in 2003.  Jeremy received physical

therapy, occupational therapy and speech therapy services at Onsite prior to the implementation

of retrospective reviews of reimbursed therapy services and continued to receive such services

after the implementation of retrospective review.  Jeremy presently continues to receive his

physical therapy services under the Arkansas Medicaid OPSTS program at the Arkansas

Children's Hospital.

Kim Jones, a speech-language pathologist owner of Onsite testified in the hearing held in

September, 2007 that she made an independent business decision to terminate Jeremy's physical

therapy services.  From that time and continuing through September 27, 2007, Plaintiff made no

attempts to obtain physical therapy services for Jeremy from any other Medicaid enrolled

therapy provider.  Sometime after the hearing held in this matter in September, 2007, Plaintiff

claims that she contacted eight or nine therapy providers but none were willing to provide

physical therapy services to Jeremy after she told them that Medicaid had denied physical

therapy without stating the dates for which the services were denied, without advising the

providers that Jeremy had recently begun a botox injection protocol and without giving the

providers the medical records to review.

ADHS claims that neither Arkansas Medicaid nor AFMC denied Jeremy any physical

therapy that was determined to be medically necessary.  Plaintiff argues that the services in

question were medically necessary and the system of utilization review implemented by ADHS

is unlawful resulting in medically necessary services being deemed medically unnecessary.

ADHS contends that prior to implementation of the retrospective review process for

therapy, there were complaints by therapy providers about the prior authorization process.

ADHS states that some therapy providers did not like the prior authorization process, expressed

to the Division of Medical Services of DHS their opposition to the process and suggested the review process be changed to retrospective review.

Retrospective reviews only affect payment to a provider in the event that the services are determined not to be medically necessary. Medicaid only reimburses for services that are medically necessary and there must be some procedure in effect for the determination of medical necessity. The medical necessity of physical therapy, speech therapy and occupational therapy is determined by AFMC. Both the therapy provider and the recipient may appeal a denial under Arkansas law if they disagree with a medical necessity determination. Onsite has utilized this appeal process many times. Plaintiff admits that Jeremy does not have a federally enforceable right under the Medicaid Act to receive Medicaid reimbursed physical therapy, speech therapy or occupational therapy that is not medically necessary.

Jeremy's mobility skills were reduced because of a change in his medical condition between March 2004 and March 2005. His ambulation fell by one third. The regression in Jeremy's skills were unrelated to any reduction in therapy services as they were prior to the retrospective review performed by AFMC in late 2005 and early 2006.

Plaintiff seeks declaratory and injunctive relief from the Court because the decision to implement retrospective review with respect to OPSTS services violates the Medicaid Act, specifically 42 U.S.C. §1396a(a)(30)(A), because ADHS did not conduct an impact study before putting that decision into effect. In the alternative, Plaintiff seeks declaratory and injunctive relief because the rules set forth in the OPSTS Provider Manual regarding medical necessity of physical therapy services violate the Medicaid Act, specifically 42 U.S.C. §1396d(a)(13) because they fail to require the approval of services that will result in the maximum reduction of physical and mental disability and restore children to their best possible functional level.

<u>Standard for Summary Judgment</u>

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

7

*Anderson*, 477 U.S. at 248.

<u>Discussion</u>

ADHS argues that the Court lacks jurisdiction to hear Plaintiff's arguments because the Plaintiff has no standing to raise these challenges.   The party invoking federal jurisdiction has the burden of establishing that he has standing to assert the claim.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Article III of the United States Constitution limits the judicial power of this and other courts to the resolution of "cases" and "controversies." The concept of standing demands at a minimum that the party seeking judicial relief have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." *Baker v. Carr*, 369 U.S. 186, 204 (1962). "To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,  528 U.S. 167, 180-181(2000).  "Typically ... the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984). We must view these requirements in light of the Article III "notion that federal courts may exercise power only in the last resort, and as a necessity, and only when adjudication is consistent with a system of separated powers and the dispute is one traditionally thought to be capable of resolution through the judicial process." *Id.* (internal quotations and citation omitted).

Plaintiff alleges that the decision of ADHS to implement retrospective review with

respect to OPSTS services violates the Medicaid Act, specifically 42 U.S.C. §1396a(a)(30)(A), because ADHS did not conduct an impact study before putting that decision into effect and the rules set forth in the OPSTS Provider Manual regarding medical necessity of physical therapy services violate the Medicaid Act, specifically 42 U.S.C. §1396d(a)(13) because they fail to require the approval of services that will result in the maximum reduction of physical and mental disability and restore children to their best possible functional level.   Plaintiff alleges that the medical necessity standard imposed under this system results in medically necessary services being deemed to be unnecessary.

It is undisputed that Jeremy, as a Medicaid eligible individual under the age of 21, has access to medically necessary occupational, speech and physical therapy services and has had access to such service since the retrospective review process was implemented in 2003.  Jeremy received physical therapy, occupational therapy and speech therapy services at Onsite prior to the implementation of retrospective reviews of reimbursed therapy services and continued to receive such services after the implementation of retrospective review.  Kim Jones, a speech-language pathologist owner of Onsite testified in the hearing held in September, 2007 that she made an independent business decision to terminate Jeremy's physical therapy services in June 2007.  Jeremy presently continues to receive his physical therapy services under the Arkansas Medicaid OPSTS program at the Arkansas Children's Hospital.  Retrospective reviews only affect payment to a provider in the event that the services are determined not to be medically necessary.  Jeremy received the services in question and is not liable for claims denied based upon medical necessity.

The Eighth Circuit has held that recipients have enforceable rights under 42 U.S.C. §§ 1396(a)(30)(A) and 1396d(a)(13). *Pediatric Speciality Care, Inc. v. Arkansas Dept. of Human*

*Serv.*, 364 F. 3d 925 (8th Cir. 2004) and *Pediatric Specialty Care, Inc. v. Arkansas Dept. of Human Serv.*, 293 F. 3d 472 (8th Cir. 2002).   However, Plaintiff has failed to present evidence of an injury-in-fact which is fairly traceable to the challenged action of the defendant.   Jeremy received the services which were later determined by AFMC to be medically unnecessary, he continued to have access to medically necessary services and continues to receive those services. Plaintiff is not liable for reimbursement to the provider and the provider in this case has not been required to reimburse ADHS.   The director of Onsite made an independent business decision to terminate physical therapy services to Jeremy in June 2007.   Neither ADHS nor AFMC had made a determination at that time that the physical therapy services being provided to Jeremy were not medically necessary.   Although the denial of a federal benefit can result in a loss to both providers and recipients, in this case, because the review and denial occurred after the services were provided, Jeremy suffered no loss.   The Court cannot find that the challenged actions of these defendants resulted in any injury to Jeremy.   The "'case or controversy'" limitation of Article III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."   *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976).

For these reasons, the Court finds that Plaintiff has no standing to pursue this action, Defendant Arkansas Department of Human Services' motion for summary judgment is granted, docket # 40, Defendant Arkansas Foundation for Medical Care Inc.'s motion for summary judgment is denied as moot, docket # 37 and Plaintiff's motion for summary judgment is denied, docket # 23.

IT IS SO ORDERED this 21st day of July, 2008.


_____
James M. Moody
United States District Judge